(92 Misc. Rep. 453)

SAGONE v. MACKEY.

(Supreme Court, Appellate Term, First Department. December 13, 1915.)

1. PRINCIPAL AND AGENT ☞136—AGENT'S LIABILITY TO THIRD PERSON—MONEY RECEIVED.

Where plaintiff paid money to defendant solely in his capacity as agent of a surety company with which she was dealing, whatever defendant subsequently did with the payment, failing to turn it over to the company, he was not liable to plaintiff for such funds received solely in his representative capacity, rendering his principal liable for them, unless fraud or duress exerted upon the plaintiff by defendant, or mistake on her part, occasioned the payment.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 447–450, 476–491; Dec. Dig. ☞136.]

2. PRINCIPAL AND AGENT ☞190—DEALING WITH AGENT AS SUCH—SUFFICIENCY OF EVIDENCE.

In an action to recover money paid defendant, the general manager of a surety company, evidence *held* to show that the money was not received by defendant individually, but as an agent, and that it was deposited substantially with the surety company.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 718–720; Dec. Dig. ☞190.]

3. PRINCIPAL AND AGENT ☞159—AGENT'S LIABILITY FOR TORT.

An agent, acting within the scope of his authority, who commits an independent or concurrent tort in dealing with a third person, such as fraud, trespass, or assault, is liable to such third person.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 599–612; Dec. Dig. ☞159.]

4. PRINCIPAL AND AGENT ☞159—AGENT'S LIABILITY TO THIRD PERSON—MONEY HAD AND RECEIVED.

Where money is paid to an agent under mistake, fraud, or duress, an action for money had and received may be maintained against him before he has paid the money over to his principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 599–612; Dec. Dig. ☞159.]

Action by Concetta Sagone, as administratrix of the goods, chattels, and credits of Giacomo Sagone, deceased, against David Clinton Mackey. On defendant's motion for reargument or leave to appeal to the Appellate Division. Reargument denied, but leave to appeal granted.

For former opinion, see 155 N. Y. Supp. 354.

Argued October term, 1915, before BIJUR, PAGE, and SHEARN, JJ.

Wilder, Ewen & Patterson, of New York City, for appellant.
Samuel F. Frank, of New York City, for respondent.

BIJUR, J. This action was brought against the defendant for the conversion of money deposited by the plaintiff, and a recovery had in favor of plaintiff. The judgment was reversed, on the theory that the record showed that plaintiff's dealings were with defendant solely as general agent of the Illinois Surety Company, and that, conse-

quently, if defendant misappropriated or otherwise improperly disposed of the same or similar sums, the remedy lay with his principal, but that no action in conversion could be maintained by the plaintiff. Incidentally it was pointed out that the defendant, general agent, maintained a bank account as such, and that the whole or the bulk of the money in controversy was deposited therein.

Although plaintiff respondent on this motion attempts to indicate points which have been overlooked by this court, her counsel's affidavit is largely a statement of his not unnatural dissatisfaction with our decision. But, in order that our view may be made, if possible, more clear, it may be well to consider the objections which her counsel makes. At the outset it must be understood that the record presents no controverted questions of fact in the ordinary sense. It gives rise, as I understand it, merely to questions of law, or, in the view most favorable to respondent, permits of different inferences to be drawn from the facts proved.

[1] Respondent now urges, first, that the bank account was not maintained by the general agent *as such*. I do not regard that point as material. If the defendant received the money from plaintiff solely as the agent of the Illinois Surety Company, so that immediately upon its receipt the Illinois Surety Company became the plaintiff's debtor, it is to my mind quite immaterial what he subsequently did with the cash or check (the record does not disclose which it was). But, the point being raised, it may not be inapt to point out that in the record the learned judge below remarked, "I do not question he [defendant] had the right to deposit defendant's money in this account," and upon the objection of plaintiff's counsel that the testimony was incompetent, irrelevant, and immaterial, he thereupon excluded all the testimony offered by the defendant to show that the account was kept, as it was by the authority and upon the express direction of the Illinois Surety Company, and to this exclusion defendant's counsel excepted.

[2] Respondent's second point is that we were in error in assuming that "the money was never received by the defendant individually," and he now urges that the Illinois Surety Company had no right to it, or to dispose of it. As to this the record discloses that all the transactions which plaintiff ever had in which the defendant was in any wise concerned were with the Illinois Surety Company in the course of applications for bonds or undertakings which plaintiff required to collect certain moneys; that the moneys were deposited as a result of these collections or in the course thereof; and, finally, that plaintiff receipted for so much of the money as she herself was entitled to draw individually in a receipt which reads, "Received from the Illinois Surety Company the sum of," etc. The paper bears the imprint of the "Illinois Surety Company, New York Office," and further contains the legend: "D. Clinton Mackey [the defendant] Manager; J. Elihu Root Kunzman, Assistant Manager." Moreover, it does not appear that defendant was ever physically present at any of the transactions conducted by the plaintiff, but that plaintiff's dealings were exclusively with Kunzman, the "assistant manager" of the Illinois Surety Company, or of the New York office of the Illinois Surety Com-

pany, who, by the way, gave practically all the material evidence adduced on plaintiff's behalf.

[3] Respondent also urges now that a finding to the effect that the bank account was practically the bank account of the Surety Company and that the money was deposited substantially with the Surety Company is contrary to the finding of the learned judge below. If it were, I should not hesitate to make it, because, as I have said above, the physical facts in evidence are not disputed, and it seems to me that we have drawn the only and inevitable inference therefrom. But as I read the record and recall the brief of respondent's counsel on the appeal, his chief reliance was on a supposed rule of law that, even though defendant represented the Illinois Surety Company (as principal) throughout the transaction, nevertheless he might be made liable in conversion to plaintiff if in some way he failed ultimately to account to his principal for all the moneys received by him on the latter's behalf, including the money here in controversy. In support of that rule respondent cited, as I remember it, an extract from 31 Cyc. 1561, just as on the present motion he cites a somewhat similar extract from 2 Corpus Juris, 827, to the following effect:

"In accordance with the rule that an agent is liable for injury resulting from his misfeasance or malfeasance, an agent may be held liable in damges to third persons for conversion, unless he acts solely for his principal, or at his direction, and without any knowledge, actual or constructive, of the wrongful conversion being committed by the principal."

The vice of this argument consists in relying upon or appealing to a general statement, without examination of the cases upon which it is based, and without, therefore, a limitation of its application to appropriate circumstances. The cases cited in both Cyc. and Corpus Juris on the proposition quoted refer to the conversion of chattels the title to which remained, of course, in the plaintiff, or the identity of which could unquestionably be followed into the hands of an agent, who undertook to convert them while properly in the possession of his principal. There is no analogy between such cases and the one at bar, where the plaintiff parted with the title to the moneys which forthwith, upon delivery to defendant, vested in his principal, the Illinois Surety Company. It is also true that an agent may be liable to a third party in tort, although he is acting within the scope of his authority, provided he himself commits an independent or concurrent tort, such as fraud, trespass, or assault; but that rule has no bearing whatsoever upon the instant case.

[4] And, finally, it seems to be a recognized rule that in certain cases, where money has been paid to an agent under mistake, fraud, or duress, and before he has paid the money over to his principal, an action for money had and received may be maintained against him. But in the case at bar there is no claim that the money was parted with by the plaintiff under circumstances of fraud, duress, or mistake, and the action is for conversion and not for money had and received. On this subject 2 Corpus Juris, 821, may be examined with profit. I find applicable the further statement, there contained, that:

"Where the agent is known as such to the third person, and the payment to him is a proper one, in pursuance of a valid authority, and without fraud, duress, or mistake, the third person's remedy, in case he ultimately becomes entitled to a return of the money, is against the principal, and he cannot hold the agent individually liable for its return, although he has not paid it over to his principal"—citing cases peculiarly in point, including Colvin v. Holbrook, 2 N. Y. 126, and Huffman v. Newman, 55 Neb. 713, 76 N. W. 409.

I find, therefore, no reason for granting a reargument of this appeal. Respondent suggests, however, that a recovery for part of the money sued for in the present action was had in another suit, and that the judgment in that case was affirmed without opinion at a previous term of this court. We have not before us the record upon which the previous appeal was decided; but, to avoid the possibility that an unresolved conflict of decisions between two separate terms of this court exist, I believe that the respondent should be granted leave to appeal to the Appellate Division. All concur.

(92 Misc. Rep. 399)

### SIMPSON v. TWENTY-EIGHTH ST. CO.

(Supreme Court, Appellate Term, First Department.    November 15, 1915.)

REWARDS ☞8—CONTRACT—PERFORMANCE.

> Where a reward was offered for the return of lost rings, "no questions asked," plaintiff, who merely gave information that led to the recovery of the property by criminal proceedings, was not entitled to such reward.

> [Ed. Note.—For other cases, see Rewards, Cent. Dig. §§ 9-12; Dec. Dig. ☞8.]

Bijur, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Fifth District.